J-S31010-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES E. HAWKINS | : | |
| | : | |
| Appellant | : | No. 1289 WDA 2018 |

Appeal from the Judgment of Sentence Entered June 19, 2018
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0001123-2017

BEFORE:  OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                    FILED OCTOBER 03, 2019

Appellant, Charles E. Hawkins, appeals from the judgment of sentence entered on June 19, 2018, as made final by the denial of a post-sentence motion on August 10, 2018, following his jury trial convictions for deceptive/fraudulent business practices[1] and theft by failure to make required dispositions of funds.[2]  We affirm.

The trial court set forth the relevant factual and procedural background of this matter as follows:

The evidence adduced at trial revealed that the victim [] owned a residence in Hopewell Township, Beaver County, Pennsylvania. A garbage truck lost control and ran into her house resulting in its complete destruction. Because of the extensive damage to the home, it was necessary to demolish [it] and completely rebuild [the house]. [The victim] contracted with [Appellant], to rebuild

_____

[1] 18 Pa.C.S.A. §4107(a)(2).

[2] 18 Pa.C.S.A. §3927(a).

the home. The matter was covered by insurance, and the victim received $108,000[.00] from her insurance company, all of which was provided to [Appellant] for construction purposes.

[] [Appellant] did do some work on the house, such as digging a foundation and arranging with an outside contractor known as Superior Walls/Collier Foundation System to provide walls for the foundation. The walls were partially installed and construction [then] stopped.

[] [Appellant] placed all of the money in what he asserted was a business account. However, the evidence at trial established that [Appellant] also dealt with this money as if it was his personal account. The evidence revealed that he purchased a car and went on vacation using funds from this account. The evidence was clear that [Appellant] never segregated [the] money paid by the victim; rather, he commingled it in this account from which he extracted money for both personal and business purposes. The sum and substance of the evidence revealed that [Appellant] did very little, if any, work with regard to this project and left the victim without insurance proceeds and without a house. In fact, the evidence revealed that [Appellant] not only did not do the required work on the home, but also went to the victim at a point in time and had her sign a supplemental agreement for the purpose of acquiring additional funds for work that was never performed.

*  *  *

[On May 15, 2018,] the jury deliberated and returned a verdict, finding the [Appellant] not guilty [] of theft by deception, [] but guilty [] of deceptive/fraudulent business practices [] and theft by failure to make the required dispositions of funds[.]

Trial Court Opinion, 8/10/18, at 2-4 (footnote omitted).

The trial court sentenced Appellant on June 19, 2018. See id. at 3. On June 27, 2018, Appellant filed the following post-sentence motions: a motion to modify sentence, a motion for a new trial, a motion for arrest of judgment, and a motion to file supplemental authority and/or additional grounds for relief. See Post-Sentence Motions, 6/27/18, at 1-6. The trial court denied

the post-sentence motions on August 10, 2018. See Trial Court Opinion, 8/10/18, at 1-11. This timely appeal followed.

Appellant raises the following issues on appeal:

I. Whether there was sufficient evidence to find Appellant guilty of deceptive/fraudulent business practices and theft by failure to make required disposition of funds?

II. Alternatively, were the jury's guilty verdicts against the weight of the evidence?

See Appellant's Brief at 5.

In Appellant's first issue, he contends that the evidence was insufficient to support his convictions. Our standard of review regarding the sufficiency of the evidence is as follows:

In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

Commonwealth v. Eline, 940 A.2d 421, 432 (Pa. Super. 2007) (internal citations and quotations omitted).

To sustain a conviction for deceptive/fraudulent business practices, the Commonwealth must prove that an individual, "(1) with a wrongful intent to deceive; (2) 'in the course of business;' (3) 'sells, offers or exposes for sale, or delivers less than the represented quantity of any commodity or service.'"

- 3 -

Commonwealth. v. Hill, 140 A.3d 713, 718 (Pa. Super. 2016), quoting 18 Pa.C.S.A. §4107(a)(2). Accordingly, "fraud, which includes a wrongful intent to deceive," is an element of the crime. Eline, 940 A.2d at 433. However, such intent "may be inferred from words or conduct or from facts and attendant circumstances which are of such a nature as to prove appellant's guilt beyond a reasonable doubt." Commonwealth v. Shapiro, 418 A.2d 594, 598 (Pa. Super. 1980).

Here, Appellant only challenges the sufficiency of the evidence regarding his deceptive intent. Specifically, Appellant contends that the Commonwealth failed to prove that he possessed the intent to deceive the victim since Appellant remained in constant contact with her throughout the construction process and only failed to complete the project by the extended contractual date as a result of the victim's own conduct. See Appellant's Brief at 19-21.

During trial, the Commonwealth presented evidence that the victim and Appellant entered into a contract for the re-construction of her home on May 28, 2016. See N.T. Trial, 5/14/18 (Volume I), at 92. The contract set a substantial completion date for 200 days later. See id. at 92-93. In addition, the contract required the victim to pay the total contract price in installments. See id. at 93. Subsequently, the victim made various payments to Appellant, totaling $108,000.00. See Criminal Information, 7/31/18, at 1.

Between May 28, 2016, and December 2016, Appellant made "minimal" progress on the construction of the victim's home. See N.T. Trial, 5/14/18 (Volume I), at 96. In fact, the evidence revealed that Appellant only

"demoli[shed] the original house, [dug] a new foundation, and [put up walls] as a foundation." Id. at 255. Appellant cited various reasons for the delay including, poor soil conditions leading to trenches collapsing, and that "his wife was sick. His truck wouldn't start. His daughter had a baby. It kept raining, and he couldn't be there." Id. at 99 and 125. Additionally, during trial, testimony revealed that, after the demolition of the victim's home, Appellant promised to cap the sewer line. See id. at 81. Appellant, however, did not possess the necessary excavator permit to do so. See id. at 242. Yet, Appellant responded in the negative when the victim's son specifically asked if they were "going to have any issues with the septic. . . . Permit wise." Id. at 148. Due to his failure to cap the sewer line, Appellant never obtained a building permit and, as such, could not lawfully proceed with the project despite his proffered excuses. See id. at 244.

Accordingly, the requisite intent is confirmed by the fact that Appellant consistently took the installment payments from the victim while, at the same time, conducting virtually no work on the project and, ultimately, failing to complete construction within the agreed upon time or at all. Additionally, Appellant never refunded the victim. Lastly, Appellant's failure to obtain a building permit reasonably supported the inference that he never intended to complete construction. Therefore, when viewed in the light most favorable to the Commonwealth, the evidence presented at trial demonstrated that Appellant possessed deceptive intent and, as such, there was sufficient evidence to convict Appellant.

Likewise, Appellant argues that the evidence was insufficient to convict him of theft by failure to make the required dispositions of funds. See Appellant's Brief at 5. In particular, Appellant claims that the Commonwealth "cannot satisfy the first element requiring obtainment of another's property" because, "as a contractor, [he] received advance payment of monies pursuant to a contract with the victim." Id. at 15. We disagree.

Section 3927 defines the offense of theft by failure to make required disposition of funds as follows:

> A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S.A. § 3927. This Court previously outlined the four elements necessary to commit the crime. They are: "(1) the obtaining of property of another; (2) subject to an agreement or known legal obligation upon the recipient to make specified payments or other disposition thereof, (3) intentionally dealing with the property as the defendant's own, and (4) failure to make the required disposition of the property." Commonwealth v. Austin, 393 A.2d 36, 38 (Pa. Super. 1978), quoting Commonwealth v. Crafton, 367 A.2d 1092, 1094 (Pa. Super. 1976).

Herein, Appellant only challenges the sufficiency of the evidence regarding the first element. Particularly, Appellant cites Austin in support of his claim that "the acceptance of advance money on a construction contract is [not] the property [o]f another." Id. at 38. Ultimately, the Austin court held that, "in a single contract providing for certain services at certain prices," the "transfer of money, even in advance of the due date," results in the passing of "title as well as possession" with "only a contractual obligation remain[ing]." Id. at 38-39. Relying on Austin, Appellant reasons that because he received installment payments pursuant to an agreement to perform construction services, he obtained both title and possession of the victim's money, and therefore, cannot be held criminally liable for failing to make required disposition of funds. See Appellant's Brief at 15.

Notably, Austin does not apply to all cases involving a contractual advance in funds for services. Indeed, subsequent case law restricts its application. For example, in Commonwealth v. Robichow, 487 A.2d 1000 (Pa. Super. 1985) this Court held that if, at the outset of the agreement, the recipient does not intend to perform his or her contractual obligations, "title [does] not pass to appellant, and appellant's possession of the money [is] the property of another." Id. at 1003. Similarly, in Commonwealth v. Coward, 478 A.2d 1384 (Pa. Super. 1984) this Court explained that if contractual payments are received and earmarked for a specific purpose, a subsequent "misappropriat[ion] for a use inconsistent with [that] purpose" enables the recipient to "be convicted of an embezzlement-type offense." Id. at 1387.

In this case, the evidence, when viewed in the light most favorable to the Commonwealth, demonstrates that Appellant, at the outset, did not intend to perform his contractual obligations. See Robichow, 487 A.2d at 1003. As previously mentioned, the evidence presented at trial showed that Appellant failed to obtain the necessary permits to re-construct the victim's home. Specifically, after the demolition of the victim's original home, Appellant promised to cap the sewer line. See N.T. Trial, 5/14/18 (Volume I), at 81. However, to do so, Hopewell Township requires an excavator's permit. See id. at 242. Appellant did not have an excavator's permit in 2016. Id. Furthermore, evidence revealed that Appellant never obtained a building permit to continue construction lawfully. See id. at 244. Appellant never even went to Hopewell Township's Municipal Building to pay for the building permit. See id. Under our standard of review, the Commonwealth is entitled to the inference that this evidence sufficiently showed that Appellant never intended to fulfill his contractual obligations and, therefore, that he merely obtained "possession" of the advanced funds, not "title." Robichow, 487 A.2d at 1003.

Likewise, the evidence presented at trial established that Appellant failed to use the advance payments for their intended purpose. See Coward, 478 A.2d at 1387. In particular, trial testimony revealed that on one occasion, during December 2016, Appellant approached the victim, asserting that he needed additional funds to hire an outside contractor to install foundational walls. See N.T. Trial, 5/14/18 (Volume I), at 94. In response, the victim paid

Appellant an additional $20,594.00, and an outside contractor partially installed the walls. See id. at 95. Accordingly, at this point, Appellant served only as an agent of the victim and was required to turn the money over to the outside contractor. See Shapiro, 418 A.2d at 597; Crafton, 367 A.2d at 1094-1095. However, Appellant failed to do so. See N.T. Trial, 5/14/18 (Volume I), at 104. As a result, the outside contractor filed a mechanic's lien upon the victim's house. See id. Accordingly, there was sufficient evidence to convict Appellant.

Next, Appellant contends that he is entitled to a new trial because the verdict was against the weight of the evidence presented. See Appellant's Brief at 16. Specifically, Appellant argues that the evidence simply established "a contract preformed in a poor workmanlike manner, not criminal culpability." Id. We disagree.

When considering a challenge to the weight of the evidence offered in support of a criminal conviction, our standard of review is well settled.

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

Commonwealth v. Windslowe, 158 A.3d 698, 712 (Pa. Super. 2017) (quotations omitted), appeal denied, 171 A.3d 1286 (Pa. 2017). "To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court." Id. (citations and internal quotations omitted).

In rejecting Appellant's challenge to the weight of the evidence, the trial court reasoned as follows.

[T]he evidence at trial established that the victim received $108,000[.00] from an insurance carrier to rebuild her home, which was destroyed when it was struck by an out-of-control garbage truck. She paid the money to [Appellant] in advance of the work being done. [Appellant] accepted not only the initial payment, but also requested that the victim pay him an additional $20,000[.00] for alleged problems that he was having in connection with digging the foundation. All along, [Appellant] accepted these funds and did nothing more than dig a foundation and retain a company to [install] foundation walls []. He never paid that company for the installation of the foundation walls, leaving that debt unpaid as well.

The evidence further revealed that [Appellant] commingled all of these funds into one account that he used for both personal and business expenses. [Appellant] claimed that he paid business expenses out of this account, but the evidence also revealed that he used the funds in this account for vacation and to purchase a car. There was no accounting for the funds that the victim paid, and [Appellant] used very little, if any, of these funds toward rebuilding the house. The victim is left with no money and no ability to rebuild her house.

[Appellant] chose to testify at trial. He indicated that there were problems rebuilding the house based upon alleged soil problems

in digging the foundation. The jury heard [Appellant's] testimony and was able to compare his account of the events against that of the victim. Based upon this, the jury found [Appellant] guilty of two of the three counts of the Information, and the [c]ourt cannot say that, based upon the evidence, the jury's verdict was so contrary to the evidence that it shocked one's sense of justice.

Trial Court Opinion, 8/10/18, at 8-9.

Our review of the certified record reveals that the trial court's assessment enjoys record support. For this reason, we conclude that the trial court properly exercised its discretion in denying Appellant's motion for a new trial based on the weight of the evidence. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/2019